IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBBIE CROCKETT,                          :

    Plaintiff,                        :

              vs.                    :

HELTON & ASSOCIATES,                      :

    Defendant.                        :

Case No. 3:09CV477

JUDGE WALTER HERBERT RICE

---

DECISION OVERRULING DEFENDANT'S MOTION TO DISMISS (DOC.
#5), OVERRULING PLAINTIFF'S MOTION TO STRIKE ANSWER (DOC.
#6), SUSTAINING PLAINTIFF'S MOTION FOR MORE DEFINITE
STATEMENT, AS TO COUNTERCLAIM(S) (DOC. #6), AND
SUSTAINING PLAINTIFF'S MOTION TO STRIKE CERTAIN PORTIONS
OF COUNTERCLAIM(S) (DOC. #6); ORDER TO DEFENDANT TO
STRIKE CERTAIN PORTIONS OF ITS COUNTERCLAIM(S) AND TO
FILE A MORE DEFINITE STATEMENT, AS TO THE SAME

---

Plaintiff Debbie Crockett brings this action against Defendant Helton &

Associates ("Helton"), alleging that Helton committed various violations of the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p,[1] when

Helton attempted to collect from her on a dishonored check. Doc. #1. Among

other things, Crockett alleges that Helton attempted to communicate with her

despite knowing she was represented by a bankruptcy attorney, while wrongfully

---

[1]It is the purpose of the FDCPA to "eliminate abusive debt collection
practices by debt collectors, to insure that those debt collectors who refrain from
using abusive debt collection practices are not competitively disadvantaged, and to
promote consistent State action to protect consumers against debt collection
abuses." 15 U.S.C. § 1692(e).

threatening to have her arrested, speaking to her in an abusive, harassing and oppressive manner, and falsely representing that her debt could not be included in her bankruptcy filing. Id. On the same date as it filed its Answer and Counterclaim, Helton filed a "Motion to Dismiss for Lack of Subject Matter Jurisdiction," arguing that the debt that it was attempting to collect from Crockett was not subject to the FDCPA and, therefore, the Plaintiff's Complaint should be dismissed. Doc. #5. The Plaintiff then filed a Motion to Strike Defendant's Answer and Counterclaim, arguing that Helton's Answer should be stricken, because Helton is a corporation that cannot proceed *pro se*, and that Helton's Counterclaim should be stricken, under Federal Rule of Civil Procedure 12(f), as it contains "redundant, immaterial, impertinent, or scandalous matter." Doc. #6. The Court will begin with an analysis of the Plaintiff's Motion to Strike and then turn to a consideration of the Defendant's Motion to Dismiss.

I.    Motion to Strike Answer and Counterclaim (Doc. #6)

The Plaintiff moves to strike the Defendant's Answer, as well as its Counterclaim. The Court will consider the arguments made pertinent to each pleading, in turn.

A.    Motion to Strike Answer

Crockett argues that Helton is a corporation, that "corporations cannot

2

appear in federal court except through an attorney" and, thus, the Defendant's Answer must be stricken. Doc. #6 at 1 (quoting Doherty v. Am. Motors Corp., 728 F.2d 334, 340 (6th Cir. 1984)). In support of her argument, the Plaintiff points to statutory agent documentation from the Ohio Secretary of State's office, which indicates that a John Helton is the statutory agent for a corporation named "Helton & Associates, Tristate, Inc." Doc. #9-1. In response, Helton points out that Crockett brought suit against "Helton & Associates" rather than against "Helton & Associates, Tristate, Inc."[2] and then points to evidence (including an affidavit from Johnny E. Helton, a copy of a collection agency license, and various legal documents) indicating that "Helton & Associates" is a sole proprietorship, rather than a corporation. Doc. #7; Doc. #11 at 5-6, Exs. A-E. The Defendant's argument is well taken. Given that the Plaintiff brought suit against "Helton & Associates" and that the Plaintiff has pointed to no evidence to indicate that such is a corporation, while the Defendant has pointed to evidence to indicate that it is a sole proprietorship rather than a corporation, the Court OVERRULES the Plaintiff's Motion to Strike the Defendant's Answer (Doc. #6).

---

[2]The Court notes with some curiosity that the Plaintiff names "Helton & Associates" as the Defendant, in her Complaint (Doc. #1 (Compl.)), yet changes the name on the caption of her Motion to Strike to "Helton & Associates, Inc." (Doc. #6).

B.     Motion to Strike Counterclaim/Motion for More Definite Statement

The Court next turns to a consideration of the Plaintiff's second request in her Motion to Strike, wherein she asks the Court to strike Helton's Counterclaim, under Federal Rule of Civil Procedure 12(f).[3] Doc. #6.  In support of her Motion, the Plaintiff makes two arguments.  She first asserts that the Counterclaim makes "several bold conclusionary statements . . . [to which the] Plaintiff cannot possibly [be] expected to respond." Id. at 2.  Further, she points to paragraphs D-K of the Counterclaim in support of her assertion that Helton "makes several defamatory accusations of impropriety by Plaintiff and Plaintiff's attorneys without citing any facts or evidence." Id.

While the second part of the Plaintiff's argument fits properly into a Rule 12(f) Motion to Strike analysis, the first part is more accurately analyzed as a Motion for a More Definite Statement, under Rule 12(e).  Thus, the Court will begin by reviewing the specifics of those provisions of the Federal Rules of Civil Procedure.

> (e)    Motion for a More Definite Statement.  A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders

---

[3]While the Plaintiff could have filed a Motion to Dismiss the Counterclaim(s) for failure to state a claim, under Rule 12(b)(6), she did not.  Further, the Court would not likely have entertained such a Motion, given the *pro se* posture of Counterclaimant.

a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f)  Motion to Strike.  The court may strike from a pleading an insufficient defense or any redundant, <u>immaterial, impertinent, or scandalous matter</u>. . . .

Fed. R. Civ. Proc. 12(e), (f) (emphasis added).

As to the Motion for a More Definite Statement, the Court agrees with the Plaintiff's argument that Helton's Counterclaim makes several bold conclusionary statements to which she cannot possibly be expected to respond.  The contours of the Defendant's Counterclaim(s) are unclear to the Court, upon a reading of paragraphs A-K of the Answer (which are entitled "Defenses" and "Countercomplaint").  Doc. #4 at 5-7.  As an example only, the Defendant seems to be asserting a claim for "conspiracy to defraud" and "racketeering", yet sets forth no facts in support of these claims.  Given that the Court finds the Counterclaim(s) to be "so vague or ambiguous that the party cannot reasonably prepare a response", as provided in Rule 12(e), the Court SUSTAINS the Plaintiff's Motion for a More Definite Statement (Doc. #6), as to the Counterclaim(s).

With regard to the Motion to Strike, courts have recognized that "[a] motion to strike is a drastic remedy that should be used sparingly and only when the purposes of justice require." <u>Driving Sch. Ass'n v. Shipley</u>, 2006 U.S. Dist. LEXIS 66018, *2 (N.D. Ohio Sept. 14, 2006) (citing, among others, <u>Brown & Williamson Tobacco Corp. v. United States</u>, 201 F.2d 819, 822 (6th Cir. 1953)).  However, "a

court has 'liberal discretion' to strike such filings as it deems appropriate under

Rule 12(f)." <u>Estate of Wyatt v. WAMU/JP Morgan Chase Bank</u>, 2010 U.S. Dist.

LEXIS 72634, *4 ( E.D. Mich. May 25, 2010) (quoting <u>Stanbury Law Firm v. IRS</u>,

221 F.3d 1059, 1063 (8th Cir. 2000); 2 Moore's Federal Practice § 12.37 (3d ed.

2002)).

     As to the Plaintiff's request to strike those portions of paragraphs D-K of the

Counterclaim that purportedly make defamatory accusations of impropriety by

Plaintiff and Plaintiff's attorneys without citing any facts or evidence, the Court

finds the Plaintiff's request to be well taken, in certain regards. As an example

only, the Court highlights the following provisions of the Defendant's Counterclaim:

> (E)(2) The facts lay lie to the accusations and allegations contained in
> the Complaint of Plaintiff. Plaintiff[']s Complaint was filed in bad faith
> in furtherance of her original unlawful objective to make an illicit profit
> and as retaliation against Defendant for forcing her to comply with
> Ohio law. <u>The fact that Plaintiff could find individuals, law firms and
> other entities more than willing to collaborate, encourage, or even
> entice Plaintiff provides no defense for the actions taken.</u>
>
> . . .
>
> (K) Everything Defendant has found during investigation indicates that
> <u>those who have encouraged Plaintiff in this Complaint are in the habit
> of using U.S. District Courts first as a threat, then, if their intended
> victim fails to cave in to their extortive demands, as a weapon. Their
> actions are every bit as unethical, improper and illegal as the actions
> of that minority of collection agents whose abusive practices brought
> about the FDCPA. Their actions are a clear pattern of corrupt activity.
> Only the unavailability of a large filing fee necessary when naming
> third party counterDefendants sees them remain un-indicted co-
> conspirators. However, if the U.S. Attorney Generals' office would
> care to pick up the gauntlet Defendant will gladly step forth as
> witness.</u>

Doc. #4 at 6 (emphasis added). Language such as this is clearly improper, to the extent that it contains allegations against <u>non-parties</u> to this litigation, since the Defendant has not moved for joinder of these parties. The Court further finds that any accusations of impropriety by <u>the Plaintiff</u> are improper, if they are not alleged in defense of or in support of a claim properly on the record.

Therefore, the Court SUSTAINS the Plaintiff's Motion (Doc. #6), as it pertains to the request to strike those portions of paragraphs D-K of the Counterclaim that make defamatory accusations of impropriety by the Plaintiff's attorneys and those that make defamatory accusations of impropriety by the Plaintiff, that are not in defense of or in support of a claim properly on the record.

In sum, therefore, the Court SUSTAINS the Plaintiff's Motion for a More Definite Statement (Doc. #6), as to the Counterclaim(s), and also SUSTAINS said Motion, as it pertains to the request to strike those portions of paragraphs D-K of the Counterclaim that make defamatory accusations of impropriety by non-parties (i.e., Plaintiff's attorneys) and those that make defamatory accusations of impropriety by the Plaintiff, that are not in defense of or in support of a claim properly on the record. Furthermore, the Court orders stricken that portion of the Defendant's Counterclaim(s) that is entitled "Defenses" and "Countercomplaint" and is contained at pages 5-7 of Document #4 and also orders the Defendant to file a more definite statement as to its Counterclaim(s) (which will necessitate

7

separating any Defenses from any Counterclaim(s)), while omitting any defamatory accusations of impropriety by the Plaintiff's attorneys and also any defamatory accusations of impropriety by the Plaintiff that are not in defense of or in support of a claim properly on the record. The same shall be filed within twenty-one calendar days of the filing of this Decision.


II.   Motion to Dismiss (Doc. #5)

The Court now turns to a consideration of the Defendant's Motion to Dismiss, wherein it argues that the debt that it was attempting to collect from Crockett is not subject to the FDCPA and, therefore, the Plaintiff's Complaint should be dismissed. Doc. #5. Although the Defendant entitles its Motion as a Motion to Dismiss "for Lack of Subject Matter Jurisdiction," it is, in effect, arguing that the Complaint should be dismissed for failure to state a claim (under Rule 12(b)(6)) or for judgment on the pleadings (under Rule 12(c)).[4] Given that Rule 12(b)(6) requires a party to file a motion to dismiss prior to filing a responsive pleading and the Defendant filed the present Motion after it filed its Answer (albeit on the same day), the Motion will be analyzed as a Motion for Judgment on the Pleadings.

---

[4]This Court clearly has subject matter jurisdiction over a claim under the FDCPA. 15 U.S.C. §§ 1692-1692p; 28 U.S.C. § 1331.

8

The Court will begin its review by setting forth the standard that guides its decisions on such Motions. Tucker v. Middleburg-Legacy Place, LLC, 539 F.3d 545, 549-50 (6th Cir. 2008) (noting that the standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as the standard used to evaluate a motion to dismiss for failure to state a claim under 12(b)(6)). It will then recount the brief set of applicable facts, followed by a consideration of the merits of the Motion at hand.

A.  Legal Standard for Motion to Dismiss for Failure to State a
     Claim/Motion for Judgment on the Pleadings

In Prater v. City of Burnside, Ky., 289 F.3d 417 (6th Cir. 2002), the Sixth Circuit reiterated the fundamental principles which govern the ruling on a motion to dismiss under Rule 12(b)(6):

> The district court's dismissal of a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is also reviewed de novo. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). When deciding whether to dismiss a claim under Rule 12(b)(6), "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." Id. (citation omitted).

Id. at 424. In Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the Supreme Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure merely requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 212. Therein, the Court explained further:

9

> Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. See id., at 47-48; Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-169 (1993). "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990).

Id. at 512-13. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Supreme Court recently expounded upon Twombly in Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), writing:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the–defendant–unlawfully– harmed–me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Id. at 1949-50.

In sum, on the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949-50). Further, "a legal conclusion [may not be] couched as a factual allegation" and mere

11

"recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009)).


    B.    Applicable Facts

On June 22, 2009, the Plaintiff purchased a pizza from Domino's and paid for the same with a personal check. Doc. #4-1.  After Domino's deposited the check on or before June 25, 2009,[5] the bank dishonored the check and subsequently placed it with the Defendant for collection. Doc. #4 (Ans.) ¶ 4. Throughout September and October 2009, the Defendant communicated with the Plaintiff several times in an effort to collect on the check. Doc. #1 (Compl.) ¶¶ 7-19; Doc. #4 (Ans.) ¶¶ 7, 11, 16.


    C.    Legal Analysis

The Defendant presents two arguments for the Court's consideration.  The first is that the Plaintiff's conduct in refusing to make good on the dishonored check within ten days after receiving notice of the dishonor constituted "check theft", in accordance with Ohio Revised Code § 2913.11, and such does not fit

---

[5]While neither party highlights the date the check was deposited, the same is noted on the copy of the check put on the record as Exhibit A to the Answer, which is relied upon by both parties. Doc. #4-1.

12

within the definition of a "debt" as provided by the FDCPA. Further, the Defendant argues that the Plaintiff's "thievery" constitutes a commercial transaction, which is also not covered by the FDCPA.

Beginning with the second contention first, the premise of the Defendant's argument is that the Plaintiff is in the "business" of being a "check thief" and that any action undertaken by a business is commercial in nature and is, therefore, not subject to the FDCPA given that that Act only applies to consumer debts. Doc. #5 at 4-5. As the Defendant correctly states, the FDCPA applies to debts incurred for consumer rather than commercial obligations. 15 U.S.C. § 1692a(5). Other than conjecture, however, the Defendant offers no support for its contention that "check thievery" constitutes a commercial transaction and, even assuming that it did, the Complaint provides no allegations to indicate that the Plaintiff was in the "business" of the same, given that she participated in such conduct on only one occasion. Therefore, the Defendant's Motion is not well taken, as to this line of argument.

The Court next turns to the Defendant's contention that the Plaintiff's conduct constituted "check theft", under Ohio law, and that such does not fit the definition of a "debt" as provided in the FDCPA. In support of this argument, the Defendant points to the definition of "debt", as provided in the FDCPA, and also to Ohio Revised Code § 2913.11.

13

The FDCPA defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).  The Defendant argues that this definition does not include theft and, in support, cites the Third Circuit Court of Appeal's decision in Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3d Cir. 1987). Doc. #5 at 3.  In Zimmerman, the Appellate Court determined that the type of transaction giving rise to a "debt" under the FDCPA is "one involving the offer or extension of credit to a consumer." Id. at 1168.  Based on this determination, the Court concluded that the defendants' attempt to collect $300 from certain citizens in compensation for the alleged illegal receipt of HBO microwave television signals was not a "debt", given that it did not involve an offer or extension of credit. Id. at 1168-69.

Similarly, Helton argues that, in the present litigation, Crockett committed "check theft", which was not a "debt" since it did not involve an offer or extension of credit.  In further support, it points to Ohio Revised Code § 2913.11.  The pertinent parts of that statute read as follows:

>  (B)   No person, <u>with purpose to defraud</u>, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, <u>knowing that it will be dishonored</u> or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument.

14

(C)  For purposes of this section, a person who issues or transfers a check or other negotiable instrument <u>is presumed to know that it will be dishonored</u> if either of the following occurs:

    (1)  The drawer had no account with the drawee at the time of issue or the stated date, whichever is later;

    (2)  The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon <u>is not discharged by payment or satisfaction within ten days after receiving notice of dishonor.</u>

. . .

(F)  <u>Whoever violates this section is guilty of passing bad checks</u>. Except as otherwise provided in this division, passing bad checks is a misdemeanor of the first degree. . . .

Ohio Rev. Code Ann. § 2913.11(B), (C), (F) (emphasis added).  In sum, this

Section provides that if proof of the following is made, the person will be found

guilty of passing bad checks:  (1) the person had a "purpose to defraud"; and (2)

the person transferred a check, knowing it would be dishonored (with a

presumption of such knowledge occurring if the check was dishonored upon

presentment within thirty days after issue and the liability of the drawer is not

discharged within ten days after receiving notice of the same).

    With regard to this Ohio statutory provision, the Court makes two

observations.  The first is that the Defendant has offered no proof that Crockett

has been convicted of the crime of passing bad checks.  Furthermore, the

Defendant has offered no proof that the Plaintiff had a "purpose to defraud" when

15

she issued the subject check to Domino's. Therefore, the Defendant's argument is not well taken, as to the contention that the Plaintiff is a "check thief" under the strictures of Ohio Revised Code § 2913.11. Nevertheless, the Court will consider the Defendant's argument pertaining to the Third Circuit's decision in Zimmerman. In response to the same, Crockett attempts to factually distinguish that decision and also points to the recent, unpublished decision by the United States District Court for the Northern District of Ohio, in Kelly v. Montgomery Lynch & Associates, 2008 U.S. Dist. LEXIS 30917 (N.D. Ohio Apr. 15, 2008). In Kelly, the defendant debt collector argued (just as the Defendant in this litigation argues) that the FDCPA did not apply given that "the dishonored check in this case does not constitute a 'debt' under the FDCPA because passing a bad check is a criminal act in Ohio and claims arising out of an alleged theft should not be construed as debts under the statute." Id. at **8-9. The District Court disagreed, however, finding that "[n]umerous courts of appeals have found that the underlying monetary obligation to which dishonored checks are intended are 'debts' under the FDCPA and that attempts to collect on bounced checks constitute debt collection under the statute." Id. at **9-10 (citing Broadnax v. Greene Credit Service, 1997 U.S. App. LEXIS 776 (6th Cir. 1997); Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1325 (7th Cir. 1997); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739, 742 (9th Cir. 1997)).

16

The Court agrees with the Plaintiff's position. While the Third Circuit has, in effect, added a "credit" component to the FDCPA's definition of debt, in Zimmerman, the Sixth Circuit has not. In Broadnax v. Greene Credit Service, a case that originated in the Southern District of Ohio, the Sixth Circuit determined that an agency that attempted to collect on a bad check that had been negotiated at a local grocery store was collecting a "debt" under the FDCPA. Broadnax, 1997 U.S. App. LEXIS 776, *8 (6th Cir. Jan. 15, 1997) ("The undisputed facts evidence the creation of a consumer debt running from Humphreys to Don's Super Valu in the amount of $165 . . . ."); see also Ohio Rev. Code Ann. § 2913.11 (with historical notes indicating that § 2913.11 was in effect, with minor modifications, in 1997). As pointed out by the Plaintiff, a recent Federal District Court in Ohio similarly concluded that, regardless of the fact that passing a bad check is a criminal act in Ohio, an attempt to collect on the same is a "classic transaction out of which debts arise under the FDCPA." Kelly v. Montgomery Lynch & Assocs., 2008 U.S. Dist. LEXIS 30917, *9 (N.D. Ohio Apr. 15, 2008);[6] see also Gradisher v. Check Enforcement Unit, 133 F. Supp. 2d 988, 990-91 (W.D. Mich. 2001) (coming to same conclusion, in Michigan case); West v. Check Alert Sys., 2001 U.S. Dist. LEXIS 22122 (W.D. Mich. Sept. 7, 2001) (same).

---

[6]While it could be argued that there was a credit component to the facts in Kelly, given that the check in question was written to pay off a medical bill that was owed by the plaintiff, Kelly, 2008 U.S. Dist. LEXIS 30917, *9, there is unquestionably not a credit component to the facts in Broadnax, given that the check in question was negotiated at a local grocery store, apparently in exchange for cash, see Broadnax, 1997 U.S. App. LEXIS 776, *8.

Given that the Complaint provides sufficient allegations to give rise to a reasonable, and hence plausible, inference supporting the conclusion that the dishonored check in question constituted a "debt" within the terms of the FDCPA (and it does not give rise to either a reasonable or plausible inference supporting the conclusion that the Plaintiff is a "check thief" under Ohio statutory law), the Court OVERRULES the Defendant's Motion to Dismiss (Doc. #5).

III.    Conclusion

The Court OVERRULES the Defendant's Motion to Dismiss (Doc. #5). The Court OVERRULES the Plaintiff's Motion to Strike the Defendant's Answer (Doc. #6), SUSTAINS the Plaintiff's Motion for a More Definite Statement, as to the Counterclaim(s) (Doc. #6), and SUSTAINS the Plaintiff's Motion to Strike certain portions of the Counterclaim(s) (Doc. #6). Further, the Court orders stricken that portion of the Defendant's Counterclaim(s) that is entitled "Defenses" and "Countercomplaint" and is contained at pages 5-7 of Document #4 and, further, orders the Defendant to file a more definite statement as to its Counterclaim(s) (which will necessitate separating any Defenses from any Counterclaim(s)), while omitting any defamatory accusations of impropriety by the Plaintiff's attorneys and also any defamatory accusations of impropriety by the Plaintiff that are not in

18

defense of or in support of a claim properly on the record.  The same shall be filed

within twenty-one calendar days of the filing of this Decision.


September 20, 2010


WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:
Counsel of record

19